**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**JOHN DOE**                                                                          **PLAINTIFF**

**VS.**                          **Case No. 5:18-cv-05182-PKH**

**UNIVERSITY OF ARKANSAS-**                                  **DEFENDANTS**
**FAYETTEVILLE, et al.**

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

## I.   INTRODUCTION

The Defendants' attempts to trivialize the issues in this case is both disappointing and telling.  Defendants first complain that Title IX places the burden on them to determine "whether allegations of sexual misconduct are true or false" but then accuse John Doe of "reacting" to the adverse finding of sexual assault by the University Hearing Panel by filing the instant lawsuit and state that "the issue is not whether he actually sexually assaulted the complainant."  For John Doe, who is facing the prospect of living a life branded as a sexual predator, the issue *is* whether he actually sexually assaulted the complainant.  But more importantly for this lawsuit is the University's disregard for its obligations to Doe under Due Process and Title IX to conduct a deliberate, fair, and unbiased review of the allegations and render a decision in compliance with due process and its own policies.  The University failed, and because of that failure, Doe has filed the instant lawsuit that sufficiently pleads both violations of due process and Title IX.[1]

## II.  DUE PROCESS

### A.  DOE'S COMPLAINT ADEQUATELY STATES A DUE PROCESS CLAIM.

Doe's complaint adequately pleads that the Defendants failed to provide him due process in resolving the sexual assault allegations against him.  The Supreme Court has long held that a state institution "is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975).  The Due Process Clause also forbids arbitrary deprivations of liberty. "Where a person's good name, reputation, honor, or integrity is at stake because of what the

---

[1] Doe agrees that the University can only be sued through the Board of Trustees, that the Board cannot be sued for due process claims but can be sued for Title IX violations, that the Official Capacity defendants can only be sued for injunctive relief and attorneys' fees but not damages, and that the Individual Capacity defendants can be sued for both injunctive relief and damages.

government is doing to him, the minimal requirements of the Clause must be satisfied." *Id.*

A university student facing expulsion is entitled to due process, including "adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all protective measures." *Esteban v. Cent. Missouri State Coll.*, 415 F.2d 1077, 1089 (8th Cir. 1969). A decision-making body's consideration of allegations not included in the notice provided by the University creates a due process violation. *Navato v. Sletten*, 560 F.2d 340, 346 (8th Cir. 1977). The decision in *Navato* starkly illuminates that Doe's allegations of a due process violation are sufficient based on the improper notice alone. In *Navato*, a university medical student argued that the imposition of sanctions against him by a university committee violated due process because the university failed to provide him sufficient notice of the allegations against him. The university argued that he received notice of the charges against him in a meeting between he and his supervisor in which they discussed concerns the supervisor had regarding his performance. During the panel's consideration of the issue, however, the university raised additional claims regarding other criticisms of his work that were not included in the original notice. The district court found in favor of the university, and the student appealed. On appeal, the 8th Circuit reversed, finding that the university breached the student's due process rights by failing to provide proper notice regarding the full breadth of allegations against him. Specifically, the court noted that although Navato was provided notice of the allegations from his supervisor's concerns with his performance, he was not provided notice of the other allegations the committee ultimately relied on in imposing a sanction against him.

The instant case parallels the *Navato* case.[2] Here, Doe has alleged that the University's only notice to Doe was that he engaged in sexual conduct with Roe while she was incapacitated and

---

[2] Notably, because the sanction against Navato was an academic sanction rather than a disciplinary sanction as was invoked against Doe, Doe is entitled to even *more* due process protections than Navato. *See, e.g. Ashokkumar v. Elbaum*, 932 F. Supp. 2d 996, 1008 (D. Neb. 2013). Thus if the notice in *Navato* was insufficient, the notice provided by the University in this case is woefully deficient.

unable to give consent. Not only was this the only allegation in the notice of violation; this was confirmed to Doe through emails with Barnett and Farrar, and was the only basis upon which Farrar made his determination. It is indisputable that the University never provided Doe any notice regarding an allegation that Roe had expressly withheld consent. Furthermore, Defendants' contention that Roe's appeal letter could suffice as notice that the University was changing or expanding the basis of its claims against Doe is unsound. First, Roe is not a representative of or authorized to speak on behalf of the University concerning which charges the University intended to pursue against Doe.  Indeed, when Doe sought official University confirmation regarding the nature of the charges against him in advance of the hearing before the Panel, the only response he received was that he would not be provided information regarding what charges the University intended to pursue against him or any evidence used to substantiate those charges until he arrived at the hearing. Doc. No. 1, at ¶¶116-118.

Defendants cannot plausibly maintain that Roe's convoluted allegation improperly entangling the issues of lack of consent with incapacitation could be viewed as "notice" that the University intended to raise an entirely new claim that Roe had withheld consent. In her appeal, Roe stated, "It is to my understanding that the University defines sexual assault within two categories: by force and through incapacitation. I do not believe these two terms are mutually exclusive[3]. . .If an individual is incapacitated while someone performs sexual acts to them, those acts are subsequently "by force" without question." Doc. No. 1, at ¶115. While it is hard to decipher exactly *what* Roe is arguing, the best interpretation is that if a student is incapacitated as defined by the policy, it doesn't matter whether the alleged assaulter knows of the incapacitation. The fact that the student is incapacitated is sufficient to render the sexual act "by force." Notably, this does not state or imply that she actually withheld consent for the sexual acts.  Rather, she merely reframed her previous

---

[3] A plain reading of the policy's use of the word "or" indicates mutual exclusivity.

allegations that she was incapacitated at the time the acts occurred. Nothing about this could be reasonably construed as providing notice to Doe that the Panel would consider whether Roe withheld consent. Furthermore, any opportunity Doe received to be heard on those allegations was insufficient because of the flawed investigation of the University, which did not consider the issue of consent.

### 1. The Complaint adequately pleads that Roe introduced new evidence.

Defendants contend that Doe's allegations regarding the introduction of new evidence at the Panel hearing should be dismissed because "Plaintiff does not say whether the new evidence was material or what it was." Doc. No. 18, p. 7. First, Defendants' characterization of Doe's pleadings turns a blind eye to the Complaint's specific factual allegations and myopically focuses on Doe's summary of those allegations. For example, the Complaint alleges that the Panel improperly relied on "junk science" arguments regarding the actions of trauma victims to justify Roe's ever-changing narrative. Doc. No. 1, ¶ 186. These arguments were presented through Roe's advisor, operating in an improper advisor/witness role and providing closing statements that mirrored testimony to boost Roe's credibility.

More fundamentally, Doe and his counsel have been unable to ascertain precisely what evidence was submitted to the Panel because the University has refused to provide Doe a copy of the recording made of the hearing and other materials, despite multiple pre-litigation requests. Defendants cannot on the one hand deny Doe access to records, and then on the other hand claim his Complaint should be dismissed for failure to allege details in specificity. The hearing was conducted over a six hour period during which Doe was under incredible stress, and he simply cannot recall every detail without being able to review the hearing materials. Doe *fully* expects that additional allegations will be forthcoming once he has been provided the materials he is already entitled to in discovery.

### 2. The "single-investigator" model violated Doe's due process rights.

Doe has pled facts to establish that the University's "single investigator" model violated

Doe's due process rights. As pled in the Complaint, the University's Title IX investigation is initiated by the Title IX coordinator, in this case separate Defendant Farrar, who must "make an initial assessment regarding whether a potential Title IX violation has occurred." Doc. No. 1, ¶ 74. Following that initial assessment, an investigation is done by the University's Title IX investigator, at the time, separate Defendant Barnett. *Id.* at ¶ 87. The University's Title IX policy does not provide for a hearing, live testimony, or cross-examination, prior to issuance of the Coordinator's decision. *Id.* at ¶ 178. Under the University's policy, it is only upon appeal that the respondent is granted a hearing, but, as discussed in the Complaint and below, that procedure is rife with due process issues.

Defendants claim Doe has not suffered harm because the "single investigator" model resulted in a "not responsible" finding by the Title IX coordinator. Farrar's conclusion, which the Panel unexplainably reversed, is irrelevant to Doe's procedural concerns. It is impossible to predict what would have transpired if Doe was given the benefit of a live hearing and the right to cross-examine Roe and other witnesses prior to Farrar's decision. Furthermore, because the Final Investigation document compiled by Barnett was used by the Panel in making its final decision, any due process errors made during the initial investigation taint the ultimate Panel decision. Even worse, despite Doe's request, the University refused to make Barnett available to testify regarding her investigation before the Panel. Accordingly, Doe was not only deprived the right to cross examine the actual witnesses; he was also denied the opportunity to cross-examine Barnett regarding her investigation.

The University of Michigan's use of the "single investigator" model was recently enjoined on a motion for preliminary injunction because the policy's lack of a live hearing and opportunity to cross-examine the claimant and witnesses during the investigation deprived the plaintiff of his due process rights. *Doe v. University of Mich.*, 325 F.Supp.3d 821 (E.D. Mich. 2018). As discussed below, the University's failure to allow meaningful cross-examination during the investigative portion of the University's Title IX process and its failure to interview or produce witnesses violated Doe's due

process rights, and this Court should hold this claim survives Fed. R. Civ. 12(b)(6) review.

### 3. The University did not allow meaningful cross-examination.

Defendants correctly forecasted that Doe would base this portion of his Due Process claim on *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018), and for good reason. *Baum* is the latest in a line of Sixth Circuit cases that have provided persuasive and thoughtful guidance to other circuits on the right of an accused to cross-examine his accuser in a Title IX setting. *Baum* specifically held that "if a public university has to choose between competing narratives to resolve a case, the university **must give the accused student or his agent** an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder." *Id.* at 578 (emphasis added).

In *Baum*, the complainant alleged that she was too incapacitated to consent to sexual activity, while the respondent claimed the complainant did not appear incapacitated and was a willing and active participant. *Id.* at 578-79. After an investigation that included the interviews of twenty-three witnesses, the Title IX investigator concluded that she was unable to determine the complainant's level of intoxication/incapacitation and whether respondent would have noticed the alleged incapacitation prior to the sexual activity. *Id.* at 580. The complainant appealed and the review panel reversed the investigator's decision on the basis that complainant's version of events was "more credible" than respondent's. *Id.* Respondent then filed a lawsuit alleging violations of the Due Process Clause and Title IX upon which the lower court granted a motion to dismiss. *Id.*

On appeal, the Sixth Circuit held that the school was required to provide respondent with a hearing and the opportunity to meaningfully cross-examine complainant and other adverse witnesses. *Id.* at 581. *Baum* cited *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) for the principal that the "opportunity to be heard" requires the court to consider the parties' competing interests. *Id.* at 581. The Sixth Circuit has previously held that "(1) if a student is accused of misconduct, the university must hold some sort of hearing before imposing a sanction as serious as expulsion or

suspension, and (2) when the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination." *Id.* (citations omitted). This is because cross-examination "is the greatest legal engine ever invented for uncovering the truth" and allows for the discovery and probing of inconsistencies in the parties' relative stories. *Id.* "Without the back-and-forth of adversarial questioning, the accused cannot probe the witness's story to test her memory, intelligence, or potential ulterior motives." *Id.* at 582.

Because the panel determined that the complainant's story was "more credible" than respondent's, the Sixth Circuit held the decision was a credibility determination for which respondent was entitled to cross-examine respondent and her witnesses. *Id.* The court weighed the due process interests of respondent and the burden on the university to allow cross-examination:

> Being labeled a sex offender by a university has both an immediate and lasting impact on a student's life. The Student may be forced to withdraw from his classes and move out of his university housing. His personal relationships may suffer. And he could face difficulty obtaining educational and employment opportunities down the road, especially if he is expelled.

*Id.* Although the Court held the burden on the university to allow cross-examination was very low, it did consider the interest in avoiding procedures that could subject a complainant to harassment such as allowing a respondent to *personally* confront his accuser. *Id.* at 583. Thus, the *Baum* decision did not go so far as to hold the university must allow a respondent to directly question a complainant himself.[4] *Id.* Instead, the Court held that due process required the university to at a minimum allow "the accused student's agent to conduct cross-examination on his behalf" because "an individual **aligned with the accused student** can accomplish the benefits of cross-examination—its adversarial nature and the opportunity for follow-up—without subjecting the accuser to the emotional trauma of directly confronting her alleged attacker." *Id.* at 583 (emphasis added); *see also*

---

[4] In reaction to *Baum,* the University of Michigan will reportedly institute a policy allowing cross-examination of the accuser directly by the accused, as opposed to an advisor aligned with the accused. https://record.umich.edu/articles/student-sexual-misconduct-policy-include-person-hearing.

*Doe v. Belmont Univ.*, 2018 WL 4627033, at *7, Case No. 3:17-cv-01245 (M.D. Tenn. Sept. 27, 2018) (recognizing that, under *Baum*, "if a *public* university has to choose between competing narratives to resolve a sexual misconduct case, the university *must give the accused student or his agent* an opportunity to cross-examine the accuser and adverse witnesses" (emphasis added)); *Dillon v. Pulaski Cty. Special Sch. Dist.*, 594 F.2d 699, 700 (8th Cir. 1979) (due process violated where student not allowed to cross-examine accuser during expulsion proceeding). The Sixth Circuit reversed the dismissal of respondent's Title IX erroneous outcome claim on the same grounds. *Baum*, 903 F.3d at 585-86.

Likely because the analysis of *Baum* is fatal to their position, Defendants do not attempt to tackle *Baum* head-on but instead cite only to the concurrence in *Baum* and two earlier Sixth Circuit decisions for support for their position. *See* Doc. No. 18, pp. 8-10 (*citing Doe v. Cummins*, 662 F.App'x 437 (6th Cir. 2016); *Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017)). Defendants insist that allowing Doe to submit questions to the panel satisfied due process. *See* Doc. No. 18, p. 9 (*citing Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987)). Defendants' citations are unavailing. *Nash* dealt merely with a charge of academic dishonesty and not the significantly more weighty sexual misconduct allegations levied against the respondents in *Baum* and in this case that depend entirely on credibility determinations. 812 F.2d at 656. As noted by the concurrence in *Baum*, the Sixth Circuit soundly rejected *Nash. Baum* rightly reasoned that merely submitting questions to a panel that (1) may or may not ask the right questions at the right time; (2) may paraphrase the submitted questions at their will; and/or (3) may not ask pertinent follow-up or rebuttal questions, does not provide the respondent the true benefit of meaningful cross-examination that is easily accomplished by allowing the accused or a party *aligned* with the accused to perform cross-examination. *Baum*, 903 F.3d. This rationale is equally persuasive in this case and should be adopted by this court.

### 4. The University did not interview witnesses with exculpatory information.

The paragraphs of the Complaint cited by the Defendants clearly and unequivocally pled that

the University's failure to interview Roe's mother and ex-boyfriend was a due process violation because those witnesses communicated with Roe contemporaneous to the alleged incident and were believed to hold exculpatory information. Doc. No. 18, p. 10 (*citing* Doc. No. 1, ¶¶ 181-82). The University has the temerity to represent to this Court that Doe's claim must fail because he did not allege in the Complaint what those individuals would have said if the University had interviewed them. In essence, the University's argument on this point is that Doe's due process claim fails because the University denied Doe due process. Clearly, Doe cannot allege exactly what those witnesses would have said because the University failed to interview those individuals as Doe requested. But given that Roe maintained that these two individuals were the only ones she spoke with contemporaneous to the alleged assault, it is conceivable that they could have information exculpating Doe entirely, or at the very least, bearing on Roe's credibility.

Contrary to Defendants' contention, Doe does not contend that the University has to perform a "flawless investigation;" Doe merely contends that the University's failure to interview those witnesses denied Doe the opportunity to present a meaningful defense in violation of his due process rights. *See e.g. Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (finding plaintiff's Title IX complaint met minimal pleading burden where plaintiff alleged procedural violations including that University failed to question witnesses identified by plaintiff as having exculpatory information).

### 5. Doe properly pled his substantive due process claim.

Doe has also properly pled a substantive due process claim. The Eighth Circuit has made clear that the Fourteenth Amendment prohibits governmental conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity. *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002). Where a plaintiff alleges that the government has taken an arbitrary and capricious action against him for the purpose of relieving itself from negative scrutiny, such allegations are sufficient to support a substantive due process

claim. *Id.* Doe's complaint alleges that, due to outside pressure criticizing the University's treatment of sexual assault allegations, the Panel disregarded the University's presumption of innocence, withheld critical knowledge from him regarding the scope of the allegations against him, changed the substance of the allegations against him to fabricate a finding of a violation, and then wholly disregarded all evidence to rebut that finding even to the point of making internally inconsistent findings in its order. In other words, the Complaint alleges that the Panel intentionally railroaded Doe to make the University look better. This conduct, if proven, would most certainly offend judicial notions of fairness.

Furthermore, the arbitrary nature of the Panel's decision is obvious on the face of the Complaint. First, the University ignored statements in the investigatory file, the conclusions by the Title IX coordinator regarding his finding of no violation, and also testimony before the Panel from a neutral police detective, indicating her opinion that Roe was not credible. *See* Doc. No. 1, ¶¶ 101, 183 (noting that Roe told the police officer "she did not want [the officer] talking to several of her friends," that "the investigation with Title IX showed several inconsistencies that were not mentioned or were contrary to [Roe's] original statement," and that Officer Dicus appeared at the hearing and testified that Roe was not credible). Although the credibility determinations by a neutral third party (and one trained to make such credibility determinations) would be a critical piece of evidence, the Panel *did not even mention* Officer Dicus's testimony in its decision.

Additionally, the Complaint alleges facts sufficient to illustrate that the Panel's decision was arbitrary because it was internally inconsistent on critical points. For example, the Panel refused to credit Doe's testimony regarding Roe's affirmative consent because Doe "did not admit or acknowledge her level of intoxication upon arrival at [his] residence" but simultaneously found that Doe did not know or have reason to know that Row was incapacitated. *Compare* Doc No. 1, ¶ 130 *with* ¶ 133 (where the Panel clearly conflated the terms "incapacitation" and "intoxication"). Discrediting Doe's testimony

10

solely because he did not recognize a level of intoxication that the Panel expressly held he could not have known is the height of arbitrary and result-oriented, and presents a substantive due process violation.

### 6. The appeal was actually a new hearing.

Doe has alleged a due process violation by the University where it held an entirely new fact hearing following its Title IX coordinator's original finding of no violation.  In essence, the University failed to prove its case during the first fact-finding investigation (which did not provide a hearing) and so it granted itself a second bite at the apple.  Such conduct violates due process. *Tanyi v. Appalachian State Univ.*, No. 5:14-CV-170RLV, 2015 WL 4478853 (W.D.N.C. July 22, 2015).

Defendants attempt to characterize the second fact-finding hearing as an "appeal" but even a cursory examination disclaims this notion. An "appeal" is a review of a lower tribunal's decision. While an appeal can be "de novo" wherein the higher tribunal can make its own determinations and credibility findings anew, an appeal does not contemplate the introduction of new evidence or arguments. As the court in *Tanyi* noted in response to a substantively identical argument, "The right to appeal is not equivalent to the right to a new hearing."  *Id.* In that case, the respondent was initially found not responsible for sexual assault. The University then allowed the complainant an entirely new hearing under the guise of an "appeal." At the "appeal," the University retried the original allegations and also added a new allegation for harassment. The student was again found not responsible for sexual assault but was found responsible for harassment. The district court found that the University's actions amounted to a violation of substantive and procedural due process.

In this case, as in *Tanyi*, Doe was initially found not responsible for sexual conduct with Roe when she was allegedly incapacitated and unable to consent. The University then allowed Roe an entirely new hearing under the guise of an "appeal" wherein she was allowed to introduce new evidence and retry the case against Doe on the incapacitation claim. Additionally, the Panel considered new and previously undisclosed allegations that the sexual contact was without consent, and although

the Panel ultimately affirmed Farrar's findings that Doe was not responsible for the original allegation of sexual conduct with an incapacitated person, it found that "the record [did] not support a finding of consent by the Complainant." Stated otherwise, the Panel found that Doe forcefully raped Roe. This was not an "appeal;" it was an entirely new case and was a violation of Doe's due process rights.

### 7. The University's improper burden shifting violated due process.

The Panel violated Doe's due process rights by improperly placing the burden of proof on Doe to prove an existence of consent rather than inquiring whether a preponderance of the evidence established a lack of consent. Defendants argue that "which party bears the burden of proof is normally not an issue of federal constitutional moment" citing the decision in *Cummins*. Defendants fail to acknowledge the very next sentence in the *Cummins* case, which states, "Under [*Matthews v. Eldridge, supra*], however, placing the burden of proof on the appellants may have proven constitutionally suspect due to the potentially detrimental effect on the accuracy of the hearing and the minimal burden of an alternative procedure." *Id.* at 449. Thus, the *Cummins* court **expressly recognized** that the placement of the burden of proof on a student during a Title IX hearing can, in fact, create a due process concern. Although the *Cummins* court ultimately determined that due process was not implicated in that case, it was because the school had not actually shifted the burden to the student but rather conducted a proper evaluation of the evidence to determine whether a violation was established by a preponderance of the evidence. Critical to the court's conclusion in *Cummins* was the court's determination that "the facts alleged in [the plaintiff's] complaint tend to show that the [hearing panel] did not place the burden of proof on either party."

In contrast, in the instant case, the Panel's own decision reflects an improper shifting of the burden of proof – by examining whether there was evidence *of* consent rather than examining whether there was evidence of *lack of consent*, as required by the policy. Specifically, the Panel stated in its opinion, "The record on the part of Complainant is absent of any evidence of consent…

Accordingly, because the record does not support a finding of consent by the Complainant, the panel finds that you are 'responsible' for sexual assault in violation of Policy 418.1." It is clear from the Panel's statement that the Panel evaluated the evidence to determine, in essence, whether the preponderance of the evidence supported a finding of "no violation" rather than the opposite.

As *Cummins* acknowledges, "[T]he locus of the burden of proof can frequently be dispositive to the outcome of a case." *Id.* Indeed, Defendants concede that the burden of proof has overriding impacts in a case where "the evidence is perfectly balanced." In the instant case, the University Policy requires that the Panel find a preponderance of the evidence indicates a *lack of consent* for the sexual contact. Thus, if the evidence is perfectly balanced, the Panel would be required to make a finding of no violation because the evidence did not support a finding of lack of consent. Defendants argue that the evidence was not "perfectly balanced" and that "the Complaint itself describes weighty evidence that the complainant did not consent." Doc No. 18, p. 14. However, the only "evidence" Defendants offer to support the Panel's decision is the fact that "the Plaintiff testified 'that the sexual contact was consensual' [but] the majority of the Hearing Panel did not believe him." Defendants cite the case of *United States v. Brown* as supporting the proposition that a defendant's statement, if disbelieved, can be considered evidence of guilt. As with their argument regarding *Cummins*, Defendants fail to tell the whole story. In fact, the Eleventh Circuit later clarified that *Brown* does not allow conviction of a defendant based *solely* on the fact that the jury disbelieves his statement. Rather, the statement by the defendant may *only* be used as substantive evidence of guilt "where some corroborative evidence exists for the charged offense." *United States v. McCarrick*, 294 F.3d 1286, 1293 (11th Cir. 2002). Unless the government has presented some additional evidence of guilt, the defendant's statement has **no** substantive weight. Thus, in *McCarrick*, the Court reversed the conviction because "the government has adduced **no evidence** from which the jury could draw a permissible inference [that the defendant committed the crime.]" *Id.* (emphasis added). The Eighth Circuit agrees and has held that "the

government may not rely solely on the jury's disbelief of a defendant's denials to meet its burden of proof." *United States v. Reed*, 287 F.3d 787, 788 (8th Cir. 2002).

*McCarrick* is on point. In this case, the record is entirely devoid of *any* evidence that Roe did not consent to the sexual contact. Even Roe herself could not affirmatively state that she did not consent but rather stated that she did not recall whether she had consented or not. Additionally, none of Roe's witnesses made any statement regarding consent at all. The only evidence regarding consent was the detailed statement of Doe that Roe *did* consent. Thus, even if the Panel did not believe him, they could not rely solely on their disbelief to find him guilty of a violation given the lack of any other corroborating evidence of guilt. Conviction of an individual without any proof violates due process in and of itself. *Thompson v. City of Louisville*, 362 U.S. 199, 205 (1960).

The Panel's decision constituted an improper shifting of the burden to Doe to prove his innocence, in violation of the University's presumption of innocence policy and due process.

### 8. Plaintiff's failure to train claim is properly pled.

Doe has properly pled a due process claim for failure to properly train. "To establish its failure to train theory, [the plaintiff] must show that the Board's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of the students." *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 461 (8th Cir. 2009) (decided bias issue on motion for summary judgment *after* discovery). Such deliberate indifference is established where the policymaking body had "notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Id.* Notice for deliberate indifference purposes (1) can be implied when a "failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious" or (2) where "the plaintiff can establish that a pattern of violations put the policymaking body on notice that the school's response to regularly occurring situations was insufficient to prevent the unconstitutional conduct." *Id.*

In this case, Doe's allegations in the Complaint are sufficiently pled. First, as explained in the preceding section, the Panel's decision on its face evidences a woeful disregard for the presumption of innocence, the need for evidence to support its conclusions, and the proper conclusion when the preponderance of the evidence is insufficient to establish a violation. Failure to properly train in these fundamental areas is "so likely to result in a violation of constitutional rights that the need for training is patently obvious" and accordingly, deliberate indifference can be inferred.

Furthermore, Doe has alleged a pattern of similar violations in the investigation and resolution of Title IX claims at the University. Specifically, Doe alleged that the University was under investigation from the Office of Civil Rights for allegations that the University's Title IX investigations demonstrated a pattern and practice of improperly investigating cases (Doc. No. 1, ¶ 140); that a highly publicized lawsuit had been filed against the University for its failure to properly investigate and adjudicate a Title IX case (*id.* at ¶141); and that the Arkansas legislature was investigating the University's deficient investigations and resolution of claims of sexual assault (*id.* at ¶ 142). Doe expects that discovery will reveal further proof that these investigations related directly to a systemic failure to train individuals associated with the Title IX process; but, for the purposes of a motion to dismiss analysis, the allegations are sufficiently pled.

Finally, as explained above, Doe has not been allowed to review the recording from the hearing but expects that review to reveal that the Panel members evidenced a lack of training in other areas as well, including the handling of witness testimony and improper bias for one party over the other. Again, the fact that Doe cannot conclusively prove his claims is irrelevant at the pleading stage as long as he pleads sufficient specific allegations to support his claims. Doe has met this burden.

### 9.  The University utilized an improperly low standard of proof.

Due process required that the University utilize a standard higher than preponderance of the evidence. The life-altering consequences of being found guilty of sexual misconduct in the student

disciplinary context demand a higher standard of proof than the 50.01% associated with the preponderance of the evidence standard.  In *Smyth v. Lubbers*, the United States District Court held the proper standard of proof needed to satisfy due process in a school disciplinary case involving the possession of marijuana was likely clear and convincing evidence. Although in dicta, the court cited the "nature of the charges and the serious consequences of a conviction" which had the "power to shatter career goals[] and to make advancement in our highly competitive society much more difficult for an individual than it already is."  398 F.Supp. 777, 798 (W.D. Mich. 1975).

That concept has evolved in the Title IX context where the stakes are much higher.  The United States District Court for the District of New Mexico is the latest in a line of recent cases to examine the proper standard of proof in the Title IX setting and determined that "preponderance of the evidence is not the proper standard for [sexual misconduct] investigations . . . given the significant consequences of having a permanent notation such as the one . . . placed on [plaintiff's] transcript." *Lee v. Univ. of New Mexico*, Case No. 1:17-cv-01230, at *3 (D.N.M. Sept. 20, 2018) (slip opinion) (memorandum opinion to be issued at a later date).  Addressing the exact same argument on a motion to dismiss, the United States District Court for the Southern District of Mississippi recently carried this issue past the pleading stage. *Doe v. Univ. of Miss.*, 2018 WL 3570229, at *11, Case No. 3:16-CV-63 (S.D. Miss. July 24, 2018) (collecting cases); *see also Doe v. Univ. of Colorado*, 255 F.Supp.3d 1064, 1082, n. 11 (D. Colo. 2017) ("at a minimum, there is a fair question whether preponderance of the evidence is the proper standard for disciplinary investigations such as the one that led to Plaintiff's expulsion").

Defendants state that preponderance of the evidence is the proper standard because that is the standard used in civil lawsuits with sexual misconduct allegations.  Doc. No. 18, p. 15.  The Defendants ignore the plethora of procedural safeguards given to civil litigants that were denied to Doe in this proceeding. Those safeguards, which include experienced and impartial judges, right to discovery, right to be given copies of evidence prior to a hearing, right to notice of actual charges,

the rules of evidence, sworn testimony and depositions, and the ability to engage in meaningful cross-examination (among others) were flat-out denied to Doe in the University's Title IX setting. Not only was Doe handcuffed by the lowest possible standard of proof on a charge that will burden him for the rest of his life, he was unable to properly defend himself against Roe's false allegations and the Panel's preconceived biases.

### 10. The Complaint contains allegations of "actual bias."

As cited by Defendants, the Eighth Circuit has held "[w]ith respect to the claim of bias, we observe that the committee members are entitled to a presumption of honesty and integrity unless actual bias, such as personal animosity, illegal prejudice, or a personal or financial stake in the outcome can be proven." *Ikpeazu v. Univ. of Neb.*, 775 F.2d 250, 254 (8th Cir. 1985). Once again, Defendants do not paint the entire picture.  First, Defendants ignore the "such as" portion of their own quote which clearly indicates the Eighth Circuit did not intend for those examples to be exclusive in nature. Perhaps more importantly, Defendants ignore that the Eighth Circuit was reviewing a jury verdict on the issue of bias, not deciding the issue on a motion to dismiss during the infancy of a lawsuit. Here, Doe adequately pled actual bias by the Panel throughout the Complaint and it would not be proper for the Court to dismiss this claim at this stage of the litigation. *See*, e.g., Doc. No. 1, ¶¶ 151, 215, 219, 221 (alleging specific instances of gender bias), 229, 250 (non-exhaustive list). As noted above, Doe has been unable to perform discovery in this case, and indeed, has been denied access to the University's recording of the hearing before the Panel. Doe anticipates that additional evidence of bias may surface during the discovery phase of this litigation, but Doe has sufficiently alleged specific instances of bias to survive the pleading stage.

### B.  INDIVIDUAL CAPACITY DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

In an individual capacity suit under § 1983, a plaintiff seeks to impose personal liability on a state actor for actions taken under color of state law. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690

n. 55 (1978).  Qualified immunity will shield a state actor from individual liability only if her conduct occurred during the course of her state-authorized activities. *Crow v. Montgomery,* 403 F.3d 598, 601 (8th Cir.2005).  Furthermore, a state actor is not entitled to dismissal based on qualified immunity where the plaintiff alleges a violation of a constitutional or statutory right that was clearly established at the time of the defendant's alleged misconduct.  *Gerlich v. Leath*, 861 F.3d 967 (8th Cir. 2017).  The defendant bears the burden of establishing that the constitutional rights were not clearly established. *Burnham v. Ianni*, 119 F.3d 668, 674 (8th Cir. 1997).

In this case, there is no question that Doe has alleged violations of constitutional rights under the Fourteenth Amendment and statutory rights under § 1983. Moreover, the violations of due process alleged are based on rights that were clearly established at the time of the Defendants' misconduct. In order to determine whether a right is clearly established, it is not necessary that the Supreme Court has directly addressed the issue, nor does the precise action or omission in question need to have been held unlawful. In the absence of binding precedent, a court should look at all available decisional law including decisions of state courts, other circuits and district courts. *Norfleet By & Through Norfleet v. Arkansas Dep't of Human Servs.,* 989 F.2d 289, 291 (8th Cir. 1993).

In this case, the majority of Doe's due process claims arise directly from law existing at the time of the infringing action. *See, e.g. Navato v. Sletten,* 560 F.2d 340, 346 (8th Cir. 1977)(establishing right to sufficient notice); *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002) (violation of substantive due process for government to take an arbitrary action against a citizen for the purpose of relieving itself from negative scrutiny); *Matthews v. Eldridge,* 424 U.S. 319 (1976)(due process violation for improper placement of burden on respondent); *United States v. Reed*, 287 F.3d 787, 788 (8th Cir. 2002)(attempt to convict respondent solely on Panel's disbelief of his testimony despite lack of corroborating evidence); *Thompson v. City of Louisville*, 362 U.S. 199, 205 (1960)(conviction of defendant without any evidence); *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 461 (8th Cir. 2009)(failure to

properly train); *Smyth v. Lubbers*, 398 F. Supp. 777, 798 (W.D. Mich. 1975) and *Q&A on Campus Misconduct* by Department of Education, September 2017; *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (failure to properly investigate claim). Because these specific allegations of due process violations by Defendants were clearly established constitutional rights that Doe alleges were violated by the individual capacity Defendants, those Defendants are not entitled to qualified immunity.

### III. TITLE IX

A Title IX "erroneous outcome" claim must plead two types of allegations. First, the plaintiff must allege facts "sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994). Second, the plaintiff must "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* Here, the Complaint meets both requirements.

#### A. DOE SUFFICIENTLY ALLEGED AN ERRONEOUS OUTCOME.

Doe sufficiently alleged particular facts sufficient to cast articulable doubt on the decision of the Panel that he was responsible for sexual assault in violation of University policy. The "pleading burden in this regard is not heavy." *Yusuf v. Vassar College, supra.* For example, a complaint may allege "particular evidentiary weakness behind the finding…particularized strengths of the defense, or other reason to doubt the veracity of the charge." *Id.* Alleged procedural flaws alone are sufficient. *Id.* Doe's allegations regarding procedural deficiencies, discussed in Section II herein, easily meet this burden.

#### B. DOE SUFFICIENTLY ALLEGED A NEXUS BETWEEN THE OUTCOME AND GENDER BIAS.

To satisfy the second prong, a complaint must sufficiently allege gender bias by supporting a minimal "plausible inference" of discriminatory intent. *Yusuf*, 35 F.3d at 713; *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016); Doc. No. 1, ¶¶ 137-154. In deciding a motion to dismiss, courts must view all allegations in the complaint as true and in the light most favorable to the plaintiff and "draw all reasonable inferences in favor of the sufficiency of the complaint." *Doe v. Columbia Univ.*, 831 F.3d

19

46, 57 (2d Cir. 2016). Specific allegations need not be linked to particular elements of the plaintiff's causes of action; the complaint is read as a whole. *Doe v. Brown*, 166 F.Supp.3d 177, 184 (D.R.I. 2016).

The allegations here are more than adequate. Doe alleges specific, verifiable facts regarding: federal and local pressure on the University to support females who claim sexual assault over male respondents (including by Roe herself), gender bias in the adjudication of his case, a pattern of discrimination against males by the University in Title IX cases, investigator bias, denial of cross-examination of the investigator, failure to train, and a rush to judgment. All of these allegations support inferences of gender bias.

### 1. Federal and local pressure

Allegations of external pressure from the federal OCR, local media, and student activists support an inference of discriminatory intent. The inference is particularly strong when, as here, the person lodging the charge is herself an activist. Here, Doe alleges all of these circumstances and his allegations are more than adequate at the motion to dismiss stage. *See* Doc. No. 1, ¶¶ 137-150. The Second Circuit, in *Doe v. Columbia Univ.*, found that gender bias was adequately pled when the complaint alleged criticism by the student body and in the media "accusing the University of not taking seriously complaints of female students alleging assaults by male students." 831 F.3d 46 at 57. "Against this factual background, it is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." *Id.*

Citing *Columbia*, the court in *Doe v. Lynn Univ., Inc.*, found that allegations of criticism of the university in the media, by students, and by the public for failing to take females' sexual assault complaints seriously established a nexus between the erroneous outcome and gender bias. 235 F.Supp.3d 1336, 1341-42 (S.D. Fla. 2017). The plaintiff's allegations of pressure from the OCR were

"another pebble on the scale." *Id*; *see also Collick v. William Paterson Univ.*, 2016 WL 6824374 *12 (it is a "commonsense inference that the public's and the policymaker's attention to the issue of campus sexual assault may have caused a university to believe it was in the spotlight").

The Sixth Circuit in *Baum* recognized the significance of external pressure in creating gender bias. 903 F.3d. "[P]ublic attention and the ongoing [federal] investigation put pressure on the university to prove that it took complaints of sexual misconduct seriously. The university stood to lose millions in federal aid if the Department found it non-compliant with Title IX." *Id.* at 586. Combined with circumstantial evidence of bias in the investigation and adjudication, allegations of external pressure "[gave] rise to a plausible claim." *Id.*, *see also Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) (allegations of "pressure from the government to combat vigorously sexual assault on college campuses and the severe potential punishment—loss of all federal funds—if it failed to comply" were sufficient to plead gender bias). A university's attempt to demonstrate to the government and/or to the general public that it is "aggressively disciplining male students accused of sexual assault" is a particular circumstance suggesting the presence of gender bias in a Title IX disciplinary hearing. *Doe v. Salisbury University*, 123 F. Supp.3d 748, 768 (D. Md. 2015).

Similarly, in *Doe v. Amhurst College*, the court found allegations that the woman filing the complaint was involved in a student-led protest regarding the College's handling of sexual assault allegations, that the College was aware that the complainant was involved in the movement, and was "actively trying to appease the student-led movement" were sufficient to allege the necessary nexus between gender bias and the hearing outcome. 238 F.Supp.3d 195, 223 (D. Mass. 2017). Here, the complainant was more than "involved" in the student movement. She personally created and led the movement **in reaction to the findings of the University's Title IX coordinator in her own case**. Doc. No. 1, ¶¶ 144-149. Doe sufficiently alleges that federal and local pressure, negative publicity, and fear of a lawsuit by Roe led to bias against him as a male.

### 2.   Gender bias in the adjudication

Doe also alleges gender bias in the adjudicatory process throughout the Complaint.  *See* Doc No. 1, ¶¶ 205-236. The Second Circuit accepted very similar allegations as giving plausible support to a claim of gender bias. In *Doe v. Columbia Univ.*, the following allegations gave rise to an inference of gender bias in the defendants' investigation and adjudication of the dispute: (1) the female was a willing participant in the sexual encounter and the plaintiff did not coerce her to engage in sexual activity, (2) no evidence was presented to support coercion, (3) the decision makers "chose to accept an unsupported accusatory version over [p]laintiff's", and (4) the decision makers declined to consider the testimony of the plaintiff's witnesses. 831 F.3d 46, 57 (2d Cir. 2016).

Here, Doe's allegations are almost identical to those deemed sufficient in *Columbia*. He alleges particular circumstances that preclude coercion, including that Roe was a willing participant. Doc. No. 1, ¶¶ 43-46. The Panel chose to accept Roe's unsupported accusation, even when she admitted that she did not remember whether or not she had consented to sexual activity, and despite significant testimony from a neutral third party challenging her credibility. *Id.* at ¶¶ 85, 87, 89, 132. The Panel generated, *sua sponte*, allegations that the sexual contact was non-consensual, despite the fact that Roe never alleged the use of force, which had been expressly ruled out by the Investigator. *Id.* at ¶¶ 131, 132 ("There was no evidence in the record suggesting that the sexual contact was nonconsensual"). In spite of Doe's testimony that Roe consented to the sexual activity, and with no evidence to the contrary, the Panel still found that there was insufficient evidence of consent. *Id.* at ¶135. These allegations give rise to an inference of bias in the adjudication of the case.

### 3.   Pattern of discrimination against males in Title IX cases.

"The allegation that males invariably lose when charged with sexual harassment . . . provides a verifiable causal connection" on which to allege gender bias. *Yusuf v. Vassar Co*llege, 35 at 716. Alleged "patterns of decision-making" are enough. *Id.* at 715. At the pleading stage, the plaintiff is

not required to provide statistics, nor does the court need consider "what degree of consistency in outcome would constitute a relevant pattern." *Id.*; *see also Doe v. Brown*, 166 F.Supp.3d 177, 189 (D.R.I. 2016) (requiring a male student to prove at the pleading stage that females accused of sexual assault were treated differently is "practically impossible and inconsistent with the standard used in other discrimination contexts"). Doe alleges: "In the time since the criticism and scrutiny of the University began, the University has found a violation in the overwhelming majority of cases where a female student alleges sexual assault by a male student." Doc. No. 1, ¶242. That allegation alone establishes the necessary plausible inference of gender bias.

### 4. Investigator bias and denial of cross-examination

Doe alleges that Farrar stated that Doe's "silence would not be held against him" but that "it would be different if [Title IX Investigator] Kristin [Barnett] was making the decision." Doc. No. 1, ¶94. Courts have held similar allegations sufficient to support an inference of gender bias. *See, e.g., Washington and Lee Univ.*, 2015 WL 4647996 *10 (W.D. Va.)(alleged bias of someone with influence on the proceedings combined with allegations of government pressure to convict male students of sexual assault, was sufficient to allege gender bias). Compounding the injury with a procedural error, the Panel refused Doe's request for Barnett to be present for cross-examination regarding the investigation. Doc. No. 1, ¶¶123-124. These allegations alone support an inference of bias.

### 5. Failure to train and Rush to judgment

The Complaint alleges that the University failed properly to train the members of the Panel. Doc. No. 1, ¶¶190, 226, 236. Failure to train can plausibly lead to an inference of sex bias. *Wells v. Xavier Univ.*, 7 F. Supp.3d 746, 751 (S.D. Ohio 2014). The Complaint also alleges that the University denied Doe's request for a continuance so that Barnett could be present for cross-examination and also because Roe intended to introduce evidence that Doe had never seen. Doc. No. 1, ¶¶123, 124. Doe was not informed of the charges against him until the hearing. *Id.* at ¶168. The Panel allowed Roe to change her

allegations without notice to Doe and ignored exculpatory evidence. *Id.* at ¶¶ 169, 171-75, 234.  A "rush to judgment," such as that alleged here, plausibly supports an inference of sex bias. *Wells*, 7 F. Supp.3d.

### C. DEFENDANTS MISREPRESENT THE PLEADING REQUIREMENTS.

Defendants assert that Doe's erroneous outcome claim should be dismissed for two reasons: (1) because it is founded on the "ill-conceived 'articulable doubt' standard" and (2) it fails to satisfy *Twombly*'s pleading standards. Doc. No. 18, p. 20. Neither point has merit.  To state an erroneous outcome claim, Doe must allege facts sufficient to cast some articulable doubt on the Panel's decision and particular circumstances suggesting that gender bias was a motivating factor. *Yusuf v. Vassar College*, 35 F.3d at 715. The articulable doubt standard is used only with regard to the first prong. It is not the standard for the second prong, under which the plaintiff must allege gender bias. Defendants confuse the issue by trying to apply the articulable doubt standard to both prongs. Every circuit that has been confronted with an "erroneous outcome" claim has properly considered the claim; none have rejected it outright as Defendants demand from this Court.

Relying on inapposite cases, Defendants assert that the proper standard should be "deliberate indifference."  This ignores the many recent cases brought by males who allege that, because of gender bias, they were erroneously found responsible for violating school policy. *See, e.g. Brown*, 166 F.Supp.3d; *Wells*, 7 F. Supp.3d; *Salisbury Univ.*, 123 F. Supp.3d; *Baum*, 903 F.3d; *Amhurst College*, 238 F.Supp.3d. The deliberate indifference standard is irrelevant to Doe's erroneous outcome claim, and the erroneous outcome claim properly incorporates a requirement of allegations regarding bias.

Finally, Defendants' attack on Doe's use of "information and belief" pleading is flawed because (1) the Complaint adequately pleads its erroneous outcome claim even without its information and belief statements and (2) it is well established that information and belief allegations are a "permissible way to indicate a factual connection that a plaintiff reasonably believes is true but for which the plaintiff may need discovery to gather and confirm its evidentiary basis." *Salisbury Univ.*, 123 F. Supp.3d at 76

("allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions"). Given that the forty-nine page Complaint includes seven "information and belief" allegations, Defendants' assertion that Doe's Title IX claim is "based on nothing more than 'information and belief'" is demonstrably ludicrous.

## IV. QUASI-JUDICIAL IMMUNITY

Although Arkansas has recognized quasi-judicial immunity in limited circumstances, those circumstances do not extend to the Panel members here. First, Arkansas precedent makes clear that quasi-judicial immunity does not extend to claims under Section 1983. *See*, *e.g.*, *Robinson v. Langdon*, 333 Ark. 662, 670, 970 S.W.2d 292, 296 (1998)(granting judicial immunity to administrative law judge on state law claims but separately analyzing issue of qualified immunity for purposes of 1983 claims). Second, the relevant factors for judicial immunity do not support its application here. In determining quasi-judicial immunity, the court looks at the following factors: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Robinson v. Langdon*, 333 Ark. 662, 670, 970 S.W.2d 292, 296 (1998) (incorporating standards from *Cleavinger v. Saxner,* 474 U.S. at 202, 106 S.Ct. 496). Analysis of these factors does not support the application of judicial immunity here. Although the Panel does need to perform functions without harassment and with insulation from political influence, and the process is adversarial in nature, the remainder of the factors weigh against judicial immunity. First, the process lacks any safeguards to control for unconstitutional conduct, as explained in great detail above. Second, there is no precedent taken into account in the proceedings. And most importantly, there is no way to correct any errors on appeal.

# V.  CONCLUSION

For the reasons stated herein, the Court should deny Defendants' motion to dismiss.

Respectfully submitted,

WILLIAMS & ANDERSON PLC
111 Center Street, Suite 2200
Little Rock, Arkansas 72201
Telephone:  501 372 0800
Facsimile: 501 372 6453

By: /s/ Heather Zachary
Heather Zachary (AR#2004216)
hzachary@williamsanderson.com
Alec Gaines (AR#2012277)
againes@williamsanderson.com

and

DENTON & ZACHARY, PLLC
600 S. German Ln., #101
Conway, AR 72034
Telephone:  501 348 4999
Facsimile:  501 358-4737

Justin Zachary (AR#2010162)
justin@dentonandzachary.com

*Attorneys for John Doe*

# CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2018 I electronically filed the foregoing with the Clerk of Court using the eflex system, which shall send notification of such filing to Counsel of Record.

By: /s/ Heather Zachary
Heather Zachary (AR#2004216)